HODGE'S HEIRS *vs.* DURNFORD'S CURATOR.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where an executor's account was rendered in 1804, and appears to have been communicated to the adverse party, without any objections being made, or proceedings had in relation to it, until 1820, it was presumed to have been acquiesced in, and the court adopted it as the basis of its judgment; being the safest mode of doing justice between the parties.

An extra judicial settlement of an estate between the executors and the heirs, when the parties are all of age and under no disability of contracting, is perfectly valid, and rests, necessarily, on the same footing as any other convention.

This case was before the court at its February term, 1837, on an application for a *mandamus* commanding the judge of probates to allow an appeal from an interlocutory order, requiring the defendant, as curator of Durnford, to render an account. 10 *Louisiana Reports,* 497.

On the production of the mandate of this court, disallowing the *mandamus,* and requiring the cause to proceed, the defendant filed his plea of prescription. The plaintiffs then produced, and offered in evidence a document signed by Durnford, in March, 1804, purporting to be an account rendered by him as executor, which they stated they offered for the sole purpose of repelling the plea of prescription, and without admitting any of the items contained in it.

The plea of prescription was overruled, and the curator filed an account, made out from the one of Durnford, in 1804. The plaintiffs filed written exceptions and opposition to it. The defendant's counsel objected and excepted to the right of the plaintiffs to make opposition, on the ground of their long silence since the rendition of this account by Durnford, but the court overruled this exception, and its opinion was excepted to.

After hearing all the evidence and the arguments of counsel, the judge of probates gave judgment in favor of the plaintiffs for the sum of thirty thousand eight hundred and

EASTERN DIST. seventy-five dollars and eighty-seven cents, to be recovered
April, 1839. from Durnford's estate.

HODGE'S HEIRS     The curator appealed.
vs.
DURNFORD'S C'R.   The material facts of this case are stated in the opinion of
the court.

*D.* and *J. Seghers,* for the plaintiffs, urged the affirmance
of the judgment.

*Strawbridge* and *Grymes,* insisted in argument, that the
account of Durnford, which he rendered of his administra-
tion of Hodge's estate, in March, 1804, should, from the
great lapse of time, be considered as acquiesced in by the
plaintiffs, and taken as the basis of the settlement of his
liabilities as executor. It has been produced by the plaintiffs'
counsel, which shows it was communicated to them, and
they have acquiesced in its general correctness, without
objection, for nearly twenty years.

2. The defendant's counsel also denied the jurisdiction of
the Probate Court, in a matter of contestation between per-
sons of full age. They likewise urged their plea of pre-
scription.

*Eustis,* J., delivered the opinion of the court.

The plaintiffs, alleging themselves to be the testamentary
heirs of the late David Hodge, sued Thomas Durnford, whom
they charge to have been one of the testamentary executors,
and as having acted by appointment for the other executors
of their testator, for an account. On the 3rd day of Septem-
ber, 1823, citation issued, and the defendant answered by his
attorney, denying the capacity of the plaintiffs, as *heirs,* or
that he had any funds of the estate of the late David Hodge
in his hands; alleging, on the contrary, that the said estate
was indebted to him in large sums of money : the general
issue was also pleaded, and the prescription of one, two, five,
ten, twenty, and thirty years.

In 1828, Durnford died, and Mr. John M'Donough,
on the 24th of December of that year, being the curator of

the deceased, whose succession had been opened in the court
below, was made a party defendant to the suit, in his capa-
city of curator.

On the 14th of August, 1837, judgment was rendered
against the present defendant, as curator of Durnford, for the
sum of thirty thousand eight hundred and seventy-five dol-
lars and eighty-seven cents, from which judgment he has
appealed.

On the question of jurisdiction of the Court of Probates,
raised by the defendant's counsel, after due consideration of
the subject in all its bearings, we adopt the opinion expressed
by this court in this suit, on a former occasion.   See 10
*Louisiana Reports*, 497.

Hodge died in New-Orleans, in August, 1791; Durnford,
as one of his executors, and by appointment of the others,
took possession of his estate, of which an inventory was made,
and of which he appears to have had the sole administration.

On the 30th of August, 1836, the defendant filed a plea of
prescription, and as is stated, for the purpose of repelling this
plea, the counsel for the plaintiffs produced an account filed
by Thomas Durnford, dated on the 25th of March, 1804.   It
was produced under a reservation, as is also stated, of not
admitting any of the items contained in it.   The defendant's
plea of prescription was overruled, and he was ordered to
render an account.

On the fifteenth of September following, the defendant
renders this very account which had been thus produced by
the plaintiffs as the account of the administration of Thomas
Durnford, which he prays may be homologated, and that he
be discharged from any further responsibility in relation to
the plaintiffs' claims.

Hodge, who was a merchant in New-Orleans, left, at the
time of his death, apparently a large estate, considering the
condition of the country at that time; his testamentary dis-
positions were, as is not unusual, ostentatious, but even at
this remote period we have evidence before us that he left
unpaid debts which had long before been contracted, and
which show on his part great looseness in the transaction of

his business.  He left among his papers a list of assets and debts which appear to have been due to him, to which was affixed this declaration :—

"As it seems very probable that I may be taken suddenly in a fit, and in case it should be so, I keep in my pocket a little kind of memorandum of most of my property and demands in this country; that is, exclusive of lands, lots, houses, etc., which will more fully appear by the bonds, notes, accounts current, cash blotter, and the copy book of letters, as most part of my papers and books were burnt at the fire, since which, as I have but little business, I have kept no regular set of books.  It is to be observed that there are some bonds and notes put in my name, which is done in case I should be under the necessity of recovering them by law, but in reality they are the property of those persons, agreeably to the directions."  Dated September, 1790.

He left lots in Baton Rouge, Pensacola, and Natchez, and a few negroes, which were all disposed of by Durnford, and large tracts of land in that part of Louisiana which lies between the Perdido and the Mississippi, and known by the name of West Florida.  This account of March, 1804, is an account of Durnford's administration of the estate of Hodge.  There is nothing on its face from which we can infer any thing but fairness on the part of the executor, and before we examine the objections to it, let us consider some circumstances attending it which are by no means unimportant.  By the Spanish law, the executorship of Durnford expired in a year.  In the latter part of 1792, he was bound to render his account, and deliver possession of the estate to the heirs.  From that time to 1804, no steps appear to have been taken towards a settlement with him, and for the first time, in the year 1836, nearly forty-four years after the executorship had expired, and nearly thirty-two years after its date, this account makes its appearance, in the possession of the plaintiffs.

It is urged that the defendant, the curator of Durnford, has no means of rendering any other account than this.  It is not shown by the inventory of Durnford's estate, or other-

wise, that any documents have come to the possession of the defendant which have been withheld, or from which he would be enabled to make out an account of the administration of Durnford of Hodge's estate. It appears there were two trunks of papers at the disposal of the court below, but our attention has been called to no evidence which weakens the conclusions to which we have come on a full investigation of the whole subject. On the 21st of March, 1820, the plaintiffs instituted in the District Court a suit against Durnford, the Executor of Hodge, of the same character as that under consideration. Durnford rendered an account, which, with the exception of one item, we do not find inconsistent with that of March, 1804. It contains certain charges which are alleged to have accrued since 1804, and brings the plaintiffs in debt to the curator in a balance of five thousand three hundred and twenty-seven dollars. This suit was discontinued, and the present suit instituted in the Court of Probates. It is alleged, in the petition, that in September, 1803, they appointed Patrick Morgan their attorney, and gave him full power to call upon the said Thomas Durnford for a settlement of said estate, and to receive from him the balance of such sums as might remain in his hands, after paying the debts of said estate ; that under said power, *Morgan applied to Durnford for an account*, and for the delivery of the papers and property of the estate in his hands, and on the refusal of Durnford, in the year 1805, they commenced suit against him, and before any decree could be had, Morgan, their agent, died, and they afterwards appointed another agent, who instituted the suit in the District Court which was discontinued. In the absence of any direct proof, on a consideration of all the circumstances, we are of opinion that the account of March, 1804, must be taken to have been communicated to the plaintiff within a resonable time after its date. It is not proved that a suit was instituted in 1805, against Durnford, or at any time previous to March, 1820. We, therefore, infer that this account remained with them, without objection, from 1804 till that time. By this account, the sum of three thousand and sixty-five dollars and sixty-

EASTERN DIST.
*April*, 1839.

HODGE'S HEIRS
*vs.*
DURNFORD'S C'R.

Where an executor's account was rendered in 1804, and appears to have been communicated to the adverse party without any objection being made, or proceedings had in relation to it, until 1820, it was presumed to have been acquiesced in, and the court adopted it 'as the basis of its judgment, being the safest mode of doing justice between the parties.

EASTERN DIST.
*April*, 1839.

HODGE'S HEIRS
*vs.*
DURNFORD'S C'R.

An extra judicial settlement of the estate between the executors and the heirs, when the parties are all of age, and under no disability of contracting, is perfectly valid, and rests necessarily on the same footing as any other convention.

five cents was due to the plaintiffs.  It must be recollected, that by the change of government in Louisiana, in 1803, the tribunal under which Durnford was appointed, and to which it is alleged he was amenable for the settlement of his administration of Hodge's estate, had ceased to exist.  His responsibility could only have been established at that time by a suit in the ordinary tribunals of the country.  No such suit was instituted until 1820 ; an extra judicial settlement of the estate was perfectly valid at that period.  Indeed, the settlement of a succession when the parties are all of age and under no disabilities of contracting, rests necessarily on the same footing as any other convention upon which courts are called upon to act only when the parties cannot agree, or the interests of others are liable to be affected by their acts.

We coincide with the opinion of the judge of the Court of Probates, on the liability of the curator's estate for the Florida lands.  The judge disallowed some items of the account which were unsupported by proof, and charged the curator's estate with the sum of twenty-six thousand five hundred and seventy-two dollars and twenty-five cents, for uncollected claims due to the estate.

After this lapse of time, and the rendition of the account of March, 1804, having before us evidence of the mode of doing business of the deceased, and that many of the debts were of long standing; some belonging, in fact, to other persons, and some prescribed at the time of taking the inventory; when we take into consideration the condition of the administration of justice in the colony at that remote period, the difficulty of communication with and the remoteness of the residence of some of the debtors, the silence of the plaintiffs for so long a time, and the appearance of good faith in the account rendered, we feel ourselves bound to make it the basis of our decision, as the safest mode of doing justice between the parties.  See 1 *Story's Equity Jurisprudence*, section 523. *Baker* vs. *Biddle*, 1 *Baldwin*, 419.

We have considered the pleas of prescription and the several points to which our attention has been directed by counsel, and after the best examination we have been able to

give the subject, we conclude to allow the balance of the

| | |
|---|---|
| account of March, 1804, | $3,065 62 |
| Less sundry debts not due, though credited, | 1,141 75 |
| | $1,923 87 |
| We allow the six bales of cotton mentioned in the account, | 243 00 |
| | $2,166 87 |

The judgment of the Court of Probates, is, therefore, reversed, and judgment is awarded in favor of the plaintiffs against the defendant, curator of Durnford, for the sum of two thousand 'one hundred and sixty-six dollars and eighty-seven cents, with legal interest, the appellees to pay costs.

It is ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled, avoided and reversed; that judgment be awarded in favor of the plaintiffs against the defendant, curator of Durnford, for the sum of two thousand one hundred and sixty-six dollars and eighty-seven cents, with legal interest, from the date of the rendition of the judgment by this court; the appellants to pay the costs of the court below, those of appeal to be borne by the appellees.